Hoover to Use *v.* Alexander, Appellant.

Argued October 25, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunning-ham, Baldrige, Stadtfeld and Parker, JJ.

*Edwin S. Strite* and with him *Wm. S. Hoerner*, for appellant.—In a release of a tract of real estate from the lien of a mortgage where there are two clauses contradictory of each other, the first must be held to control. Conner's Estate, 302 Pa. 534; Buechley's Estate, 283 Pa. 107; Straus & Sons v. Wanamaker, 175 Pa. 213.

*Edmund C. Wingerd*, for appellee.

OPINION BY BALDRIGE, J., December 16, 1932:

This appeal is from the decree of the court dismissing exceptions filed on behalf of the appellant herein to the distribution by the sheriff of the proceeds of the sale of real estate of William Alexander.

The defendant, Alexander, acquired from different grantors three tracts of land located on the south bank of the Conococheague Creek, totalling 58 acres and 39 perches. The heirs of Robert J. Lawton, deceased, by deed, dated June 6, 1913, conveyed to Alexander three tracts of land lying on the north bank of the creek. They are described as tract No. 1, containing 33 acres and 62 perches; tract No. 2, containing 136.7 perches; and tract No. 3, containing 6.1 perches. On January 2, 1914, Alexander executed a mortgage covering all the above-mentioned land, in favor of Isaac Hoover, guardian, to secure the payment of $3,000. The property is described in the mortgage as consisting of four tracts—No. 1 included the three tracts lying on the south bank of the creek and aggregating 58 acres and 39 perches; Nos. 2, 3 and 4

was the land acquired from the Lawton heirs. On August 11, 1922, Isaac Hoover, as guardian, entered upon the margin of the record of his mortgage, the release, which, as offered in evidence, reads as follows: "August 11, 1922. Interest paid on this mortgage to April 1, 1922, and for value received the lien of this mortgage is released as to Tracts 2, 3 and 4 purchased by the mortgagor from the heirs of Robert J. Lawton, deceased, by deed dated June 6, 1913, recorded in Deed Book Vol. 172, page 83, of the deed records of Franklin County, Pa., containing thirty-five acres more or less. And I agree to look to the tracts Nos. 1 & 2 for the payment of this mortgage and not to the said Tract No. 3." On September 25, 1922, Hoover, as guardian, assigned his mortgage to the Chambersburg Trust Company and it in turn assigned the same to Roberta McA. Mumford. On July 2, 1930, judgment was confessed on the bond secured by the Hoover mortgage, fi. fa. issued, and the lands were sold by the sheriff. On July 26, 1929, the Chambersburg Trust Company, appellant herein, entered against William Alexander, five judgments, which, it contends, are entitled to participate in the distribution of this fund as tracts Nos. 2, 3 and 4 described in the mortgage are released of its lien.

Four questions are raised by this appeal:

1. If there is a contradiction between two clauses in this release, does the first control?

2. Is there evidence of material alteration of the numerals in the release, in view of the written words that immediately follow identifying the tracts as designated?

3. Does a presumption exist in this case that the alterations were made after the execution of the release?

4. Was the release of the guardian, executed without authority of orphans' court and after the ward became of age, void?

(1)   We concede that the general rule is that if two totally repugnant clauses appear in a writing, except in a will (Conner's Est., 302 Pa. 534, 153 A. 730), the latter must yield to the former:  Harrity et al. v. Continental-Equitable T. & T. Co., 280 Pa. 237, 124 A. 493. This rule does not apply if there is an obvious and material alteration in the first clause.   In the case at bar, the photostatic copy of the release, which appears in the record, clearly discloses an erasure of the original numbers and a substitution.   The learned court below accurately described the appearance of the release, as follows:  "An examination of that record as it appears in the mortgage book shows plainly that the figures 2, 3, 4 appearing in the early part of said release as the tracts to be released, are figures placed there after an erasure was made by erasing with some sharp instrument, and that the said three figures are much crowded together and blurred from being written over the place where the erasure had been made.   All of this is apparent to the naked eye, and when examined under a magnifying glass is, of course, much plainer.   It is impossible to say what the release was as to the tracts released before the erasures were made, we have no evidence as to when they were made, or by whom or under what circumstances."   In view of the patent alteration, we are without knowledge as to the original figure or figures used in that part of the release.   The latter part of this writing is unaltered and its language and intention are clear.   There can be no dispute as to the guardian's intention to retain a lien on tracts Nos. 1 and 2.

This first question must be answered in the negative.

(2)   The appellant, in support of its position that there is no material alteration, directs our attention to the writing following the numerals, to wit:  "The lien of this mortgage is released as to tracts 2, 3 and 4 purchased by the mortgagor from the heirs of Robert

J. Lawton, deceased, by deed, dated June 6, 1913,......
containing thirty-five acres more or less." It is contended that this language discloses a manifest intention to release all the land purchased by the mortgagor from the Lawton heirs; that no alteration appears in the writing and that it is entirely consistent with the preceding numerals. If the writer of the release had added after the numerals the words "being all the land purchased," there would be much force to the argument, but the reference would be just as appropriate to any one as to all the tracts. The words "containing thirty-five acres" did not designate the lands released; if so, they would have naturally followed the numerals. The apparent intention is that the land released was purchased by the mortgagor by deed, dated June 6, 1913, which deed contained a description of land containing thirty-five acres more or less. This interpretation is greatly fortified by the last portion of the release: "And I agree to look to the tracts Nos. 1 and 2 for the payment of this mortgage and not to the *said tract* No. 3." This alteration was important. It was a falsification of a very material fact as it impaired the security of the obligation: Citizens Nat. Bank v. Williams, 174 Pa. 66, 34 A. 303.

(3) That brings us to the next position taken by the appellant. If an erasure, alteration or interlineation appears on the face of an instrument, primarily there is a presumption in favor of innocence and therefore that it was made before execution. "But if the alteration is beneficial to the party offering it, or if there is anything on the face of the instrument which appears suspicious, the presumption disappears and the burden is on the party offering the writing to explain the alteration to the satisfaction of the jury": Henry's Pennsylvania Trial Evidence (2d Ed.), §197. Our Supreme Court in Shiffer v. Mosier, 225 Pa. 552, 558, 74 A. 426, said: "It is also a general principle

of law that: 'An altered instrument is so far vitiated that no recovery can be had on its original or altered terms. It cannot be considered as void for the unauthorized change and valid in other respects, but is void altogether': 2 Cyc. L. & P. 182, Sec. c.'' See also Colonial Trust Co. of Reading v. Getz, 28 Pa. Superior Ct. 619; Hill v. Cooley, 46 Pa. 259; Bowman v. Berkey, 259 Pa. 327, 103 A. 49.

This alteration, which has heretofore been pointed out, was suspicious on the face of the instrument, and, therefore, cannot be presumed to have been innocently made; and, as it was not satisfactorily explained, the appellant's position, that no presumption exists that alterations were made after execution of the instrument, is not tenable.

In Stevens v. Martin, 18 Pa. 101, where letters patent were admitted in evidence, the letter "C" was interlined over the numerical letters designating the land. But, there, the location of the land was fixed with reasonable certainty, independent of any numerical letters. In Xander v. Com., 102 Pa. 434, where alterations appeared in an official bond, the court held there was a presumption that erasures were made before delivery and approval. The bond had to be approved by the orphans' court and it was held that it must be presumed that the court fully performed the duty imposed by law and any erasures and interlineations, with other matters material to its validity, were presumed to have been satisfactorily established and explained. In Hildebrand v. Burger et al., 102 Pa. Superior Ct. 163, 156 A. 593, the alteration was not material as it did not affect the terms of the contract.

We have before us a patent ambiguity. This writing is contradictory on its face as it releases and then retains the lien on tract No. 2. The true rule with regard to patent ambiguities is stated in 32 C. J. p. 1199, §1599, namely: "In other words and more generally

speaking, if the court, after placing itself in the situation in which the parties stood at the time of executing the instrument, and with full understanding of the force and import of the words, cannot definitely ascertain the meaning and intention of the parties from the language of the instrument thus illustrated, it is a case of incurable and hopeless uncertainty and the instrument is so far inoperative and void; and it cannot be sustained or rendered operative by the introduction of evidence which would necessarily have the effect of adding new terms to the writing.''

(4) It is unnecessary to discuss the fourth position taken by the appellant as our disposition of those we have considered is controlling.

Decree of the learned court below is affirmed.